IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **TYLER FITZGERALD RAYBON-TATE,** ) <br> **#485797,** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **DERRICK SCHOFIELD, et al.,** ) <br> ) <br>     **Defendants.** ) | Case No. 3:15-cv-00322 <br> Judge Trauger / Frensley |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 132. Along with that Motion, Defendants have contemporaneously filed a supporting Memorandum of Law (Docket No. 133), a Statement of Undisputed Material Facts (Docket No. 140), and the Affidavits of Deborah Tomlin (Docket No. 134), Derrick Schofield (Docket No. 135), Stevenson Nixon (Docket No. 136), Tony Parker (Docket No. 137), Marcia Campey (Docket No. 138), and Patricia Crockett (Docket No. 139).

Plaintiff has filed a Response to the instant Motion, which specifically states that it is a Response to Defendants' Motion for Summary Judgment, supporting Memorandum of Law, and Affidavits, but which also contains handwritten responses to Defendants' Statement of Undisputed Material Facts. *See* Docket No. 144.[1]

---

[1] The portion of Plaintiff's Response that appears to be a response to Defendants' Statement of Undisputed Material Facts contains Plaintiff's handwritten responses to the facts set forth therein; it does not, however, contain the requisite citations to the record, nor is it in a form required by either the Federal or Local Rules. *See* Docket No. 144, p. 7-22.

Plaintiff, an inmate of the Tennessee Department of Correction ("TDOC"), filed his pro se, in forma pauperis, Verified Complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights when they failed to place a statewide "incompatible" designation on him, which in turn resulted in him being assaulted. Docket No. 1. Plaintiff sues Defendants in their official capacities, and seeks: (1) a designation of "incompatible" in the TDOC computer system; (2) an Order that he be housed at the DeBerry Special Needs Facility for the remainder of his sentence; (3) to be taken to "outside medical" to "check & clear" him from the assault; (4) to receive physical therapy; (5) $3,000,000.00 in compensatory damages from TDOC; and (6) an immediate release from prison. *Id.*

Defendants filed the instant Motion for Summary Judgment and supporting materials arguing that they are entitled to a judgment as a matter of law because: (1) Plaintiff's claims against Defendants Schofield and Parker are based upon respondeat superior, which does not provide a basis for the imposition of liability under §1983 absent allegations that they personally authorized, approved, or knowingly acquiesced to the allegedly unconstitutional conduct; (2) Defendant Schofield did not receive a copy of the hearing transcript referenced in Plaintiff's Complaint and therefore did not have notice of any threats to Plaintiff's safety; (3) Plaintiff's allegations that Defendants should have placed a statewide incompatible designation in his record is conclusory and fails to allege any unconstitutional acts on the part of them; (4) because Defendants did not know of a substantial risk to Plaintiff's safety, they can not be said to have disregarded that risk, such that they cannot be held liable for such an Eighth Amendment claim; (5) none of these Defendants had any knowledge whatsoever about Plaintiff's alleged injuries, such that they cannot be held liable for denying him medical care for those alleged injuries; and

2

(6) there is no evidence in the record that Plaintiff suffered actual injury, and if he did, any such injury would be de minimis, such that under 42 U.S.C. § 1997e(e) Plaintiff would be unable to establish sufficient physical injury. Docket Nos. 132-40. Defendants further argue that this action must be dismissed because they are entitled to qualified immunity and because the Eleventh Amendment bars monetary claims against them in their official capacities, as they are not "persons" as defined in § 1983. *Id.*

Plaintiff, in his Response, argues that, "at the end of the day, my entire last 3 - 1983 complaints have been regarding the corruptness of the Tenn. Department of Corrections. And their department repeatedly, not only put my life and safety in danger. But numerous other inmates life and safety in danger in the custody of the T.D.O.C. across the state which is why I refuse to just lay down, give up and die." Docket No. 144, p. 3. Plaintiff further argues that Defendants "were all at fault for me being assaulted on 1-22-15 one way or another." *Id.* at 4. Plaintiff maintains that he repeatedly asked for an incompatible designation but his requests were ignored. *Id.*, *passim*. Addressing the issue of his injuries, Plaintiff asserts, "Between all the times that I had been assaulted at South Central, C.B.C.X., 'while in Davidson County Criminal Court' I suffered several permentaly [*sic*] physically and mentaly [*sic*] injuries. Still right to this day. I suffer from seriouse [*sic*] physical challenges and also seriouse [*sic*] mental challenges mainly 'P.S.D' [*sic*] which makes me very extra paranoid. Every [*sic*] since my assaults at S.C.C.F. and C.B.C.X." *Id.* at 5. Plaintiff argues that Defendants should be held "accountable for their actions" and should be made to "protect my life and safety while in their custody. Just as if I was their on [*sic*] son or daughter." *Id.*

For the reasons set forth below, the undersigned finds that no genuine issues of material

fact exist and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 132) be GRANTED.

## II. Undisputed Facts[2]

### A. Allegations Against These Defendants in Plaintiff's Verified Complaint

Under TDOC policies and guidelines, "the proper thing to do" would have been for Defendants to place a statewide TDOC incompatible designation on Plaintiff regarding every inmate who was known to be a danger to Plaintiff, but Defendants did not do so, instead refusing Plaintiff's incompatible request. Docket No. 1, p. 4-5.

Defendant Nixon verbally responded to one of Plaintiff's grievances and threatened to take away his recently-granted classification override. *Id.* at 6.

### B. Affidavit of Deborah Tomlin

At all times relevant to the instant action Deborah Tomlin was employed as an Institutional Investigator at the Charles Bass Correctional Complex in Nashville, Tennessee. Docket No. 134, ¶ 2. Investigator Tomlin had spoken with Plaintiff on several occasions and recalls him from memory. *Id.*, ¶ 3. When Plaintiff was transferred to the Charles Bass Correctional Complex, Investigator Tomlin had no knowledge of any other lawsuits Plaintiff had filed, his background, or the basis for his transfer to Charles Bass, as such information is not typically shared with her. *Id.,* ¶ 4.

Investigator Tomlin never attended any hearings related to any other lawsuit concerning

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

Plaintiff, nor was she provided with any documentation or transcripts related to any other case. *Id.*, ¶ 5. Investigator Tomlin did not receive any other information that would suggest that there was a risk to Plaintiff's safety. *Id.*

Investigator Tomlin has no specific knowledge about the alleged assault on Plaintiff at the Davidson County Courthouse on January 22, 2015; it was not brought to her attention at the time it occurred, nor was she asked to conduct an investigation into the alleged assault. *Id.*, ¶ 6.

The first time that Investigator Tomlin heard that Plaintiff wanted incompatibles put in place on his institutional record was on March 19, 2015, when she receiving an email from Plaintiff's counselor (Tom Rushing), saying that he needed to speak with her. *Id.*, ¶ 7. Investigator Tomlin received another email on the same day with information on the inmates for whom Plaintiff was requesting to be indicated as incompatible. *Id.*, ¶ 8. The inmates for whom Plaintiff requested to be indicated as incompatible on March 19, 2015 were Edwin Santiago, Jr., James Shields III, Audarious Watts, Ladarius Craig, Elbert Gleaves, and Christopher Young. *Id.*, ¶ 9. When Investigator Tomlin received Tom Rushing's emails on March 19, 2015, she immediately started an investigation into the incompatible request and, on April 1, 2015, she entered the requested inmates' names into TOMIS as being incompatible with Plaintiff. *Id.*, ¶ 10. At the time of Investigator Tomlin's Affidavit, those inmates remained listed as being incompatible with Plaintiff. *Id.* Investigator Tomlin's understanding was that in anticipation of Charles Bass Correctional Complex May 2015 closure, Plaintiff approached his counselor to make sure that when he was assigned to a new prison, he did not get assigned to one where these particular inmates were being housed. *Id.*, ¶ 11. Prior to March 19, 2015, neither Plaintiff nor anyone else had given Investigator Tomlin any reason to believe that there was a threat to

Plaintiff's safety, or that incompatibles needed to be placed on his institutional record. *Id.*, ¶ 12.

Investigator Tomlin is certain that Plaintiff never personally told her that he feared any other inmate or that he wanted an incompatible designation put in place between he and another inmate. *Id.*, ¶ 13. If an inmate claims that he is in fear for his life or that his safety is at risk, he is segregated while the incompatible investigation is conducted. *Id.*, ¶ 16.

As of March 19, 2015, none of the inmates were housed with Plaintiff at Charles Bass so there was no immediate threat to his safety. *Id.*, ¶ 14. Prior to March 19, 2015, Investigator Tomlin had no reason to designate Plaintiff as incompatible with any other inmate, and she could not have done so without having evidence that such a designation was necessary. *Id.*, ¶ 15.

Investigator Tomlin has no knowledge of Plaintiff's alleged injuries, nor has she ever been in a position to offer Plaintiff medical care. *Id.*, ¶ 17.

## C. Affidavit of Derrick Schofield

From January 2011 through June 2016, Derrick Schofield served as Commissioner of the Tennessee Department of Correction. Docket No. 135, ¶ 1. Fmr. Commissioner Schofield does not know Plaintiff, does not have personal knowledge of Plaintiff, and does not have any personal or direct knowledge of any of Plaintiff's specific claims in this case. *Id.*, ¶ 2. Based on his knowledge and recollection, Fmr. Commissioner Schofield had no involvement or direct decision-making oversight on the placement, or lack of placement, of any incompatible involving Plaintiff. *Id.*, ¶ 3. The placing of incompatibles between specific inmates is a security issue handled at the institutional level in accordance with Departmental policy. *Id.* In the normal course of events, a Commissioner would not be involved, nor be apprised of such day-to-day institution-specific matters. *Id.* Also based on his knowledge and recollection, Fmr.

6

Commissioner Schofield had no involvement or direct decision-making oversight relative to any alleged assaultive incidents involving Plaintiff. *Id.*, ¶ 4.

Fmr. Commissioner Schofield has no direct knowledge or recollection of any grievance filed by Plaintiff. *Id.*, ¶ 5. As a matter of course, Departmental policy provides that the final appellate level of inmate grievances is the Deputy Commissioner of Operations or his/her designee. *Id.* Because of this, in the normal course of events, a Commissioner would not be involved in, nor be apprised of, filed grievances or their final resolution. *Id.*

Based on his knowledge and recollection, Fmr. Commissioner Schofield did not personally receive a copy of the hearing transcript Plaintiff references in his Complaint. *Id.*, ¶ 6. The existence of the transcript was recently brought to Fmr. Commissioner Schofield's attention for the first time by his attorney, in preparation of the dispositive motion in this case. *Id.* Fmr. Commissioner Schofield was not a defendant in the case to which the transcript was related, nor did he attend any hearings in that case. *Id.*, ¶ 7. To his knowledge, Fmr. Commissioner Schofield never received any other documents related to that case, including the referenced transcript. *Id.* If the transcript had been received in Fmr. Commissioner Schofield's office, it would have been routed to the Office of General Counsel for the Tennessee Department of Correction for handling, as all legal matters were handled in such a fashion. *Id.*, ¶ 8. Legal matters were routinely delegated to the Office of General Counsel and if such matters required the direct attention or action by the Commissioner, rather than a Deputy Commissioner, Assistant Commissioner, Correctional Administrator, or Warden, Fmr. Commissioner Schofield would have been briefed. *Id.*, ¶ 9. Based on his personal knowledge and recollection, Fmr. Commissioner Schofield was not briefed on any issue, nor does he have any knowledge of any

matter specifically relative to Plaintiff. *Id.*, ¶ 10.

## D.  Affidavit of Stevenson Nixon

At the time Plaintiff filed his Complaint in this action, Stevenson Nixon served as the Warden of Charles Bass Correctional Complex in Nashville, Tennessee; he has since retired. Docket No. 136, ¶ 2.  Fmr. Warden Nixon remembers Plaintiff from memory, as he had interaction with Plaintiff on several occasions.  *Id.*, ¶ 3.

Plaintiff was housed at Charles Bass as a result of a court order issued by Judge Haynes in another federal case in which Fmr. Warden Nixon was not involved. *Id.*, ¶ 4.  Fmr. Warden Nixon has no specific knowledge about the allegations made in the other case, other than it resulted in an order that required Plaintiff to be housed at Charles Bass.  *Id.*  Fmr. Warden Nixon was not a defendant in that case, nor was he present at any hearings or depositions related thereto.  *Id.*

The court order was unusual because Charles Bass was not an appropriate placement for Plaintiff, based on his close custody classification.  *Id.*, ¶ 5.  Charles Bass did not normally house close custody inmates; rather, it was a work camp facility for inmates with lower level security classification.  *Id.*  In light of Plaintiff's close custody classification, officials at Charles Bass worked with him to get him a job and to try to lower his custody level so that his security classification would be consistent with other inmates at Charles Bass.  *Id.*, ¶ 6.  Aside from this classification issue, Fmr. Warden Nixon does not recall any major problems with Plaintiff.  *Id.*

At the time Plaintiff was received at Charles Bass, Fmr. Warden Nixon was not aware of any imminent threat to Plaintiff's safety.  *Id.*, ¶ 7.  Plaintiff never told Fmr. Warden Nixon that he feared any other inmate or that he wanted an incompatible designation put in place between he

8

and other inmate or inmates. *Id.*, ¶ 8.

Plaintiff submitted a classification appeal, requesting that his classification level be lowered, and that he be moved into general population. *Id.*, ¶ 12. On December 5, 2015, a special reclassification was done on Plaintiff because he had been housed at Charles Bass for over sixty days. *Id.*, ¶ 9. On January 7, 2015, Plaintiff was permanently classified at Charles Bass, and a custody override was completed on January 23, 2015, which lowered his custody from "close" to "medium." *Id.*, ¶ 10. The lowering of Plaintiff's custody level allowed him to be housed in general population and was done at Plaintiff's own request. *Id.*, ¶ 11. Plaintiff's reclassification would not have been approved had he previously expressed any concern regarding his safety in general population, or had prison administration had any independent knowledge of a threat to his safety. *Id.*

Fmr. Warden Nixon had no reason to designate Plaintiff as incompatible with any other inmate, and he could not have done so without having evidence that such a designation was necessary. *Id.*, ¶ 13. Once an incompatible designation is made, it is imperative that incompatible inmates not be housed at the same institution, not ride in the same transportation bus, and not otherwise come into contact with one another; accordingly, incompatible designations are taken very seriously and should be carefully considered. *Id.*, ¶ 14. Had Plaintiff notified Fmr. Warden Nixon that he feared for his safety, Fmr. Warden Nixon would have immediately started the process of investigating his claims and putting the incompatible in place if necessary. *Id.*, ¶ 15.

If an inmate claims he is in fear for his life or that his safety is at risk, he may be segregated while the incompatible investigation is being conducted, if the situation requires it.

*Id.*, ¶ 16.

Prior to March of 2015, Fmr. Warden Nixon had no information which caused him to believe that Plaintiff was in a situation which warranted an incompatible designation. *Id.*, ¶ 17.

To the best of his recollection, Fmr. Warden Nixon was not presented with, nor did he respond to, a grievance related to the matters raised in this action. *Id.*, ¶ 18.

Fmr. Warden Nixon has no knowledge about any injuries allegedly sustained by Plaintiff, nor did he have responsibility for administering medical care in his position as Warden of the prison. *Id.*, ¶ 19.

**E. Affidavit of Tony Parker**

Since July 2016, Tony Parker has been employed as the Commissioner of the Tennessee Department of Correction. Docket No. 137, ¶ 1. Prior to being appointed as the Commissioner, Commissioner Parker served as the Assistant Commissioner of Prisons, and served in that capacity at all times relevant to the instant action. *Id.*

Commissioner Parker does not know Plaintiff, nor does he have personal knowledge of either Plaintiff or Plaintiff's specific claims in this action. *Id.*, ¶ 2. Based on his personal knowledge and recollection, Commissioner Parker had no involvement or direct decision-making oversight on the placement, or lack of placement, of any incompatible involving Plaintiff. *Id.*, ¶ 3. The placing of incompatibles between specific inmates is a security issue handled at the institutional level in accordance with Departmental policy. *Id.* In the normal course of events, as the Assistant Commissioner of Prisons, Commissioner Parker would not be involved, nor be apprised of such day-to-day institution-specific matters. *Id.*

Based on his personal knowledge and recollection, Commissioner Parker had no

involvement of direct decision-making oversight relative to any alleged assaultive incidents involving Plaintiff. *Id.*, ¶ 4. Commissioner Parker has no direct knowledge or recollection of any grievances filed by Plaintiff. *Id.*, ¶ 5. As a matter of course, Departmental policy provides that the final appellate level of inmate grievances is the Deputy Commissioner of Operations or his/her designee. *Id.* Because of this, Commissioner Parker would not have been involved in, nor be apprised of, filed grievances or their final resolution. *Id.*

## F. Affidavit of Marcia Campey

Marcia Campey is employed as the Executive Secretary for the Office of General Counsel of the Department of Correction, and, at the time of the filing of her Affidavit, had been serving in that capacity for approximately twenty-two years. Docket No. 138, ¶ 2. Executive Secretary Campey reports directly to the Deputy Commissioner/General Counsel. *Id.* As the Executive Secretary, it is Ms. Campey's responsibility to maintain a log which contains the incoming and outgoing mail and records referred to the Department's Office of General Counsel. *Id.*, ¶ 3. Generally, this log would contain mailed USPS documents, courier-delivered documents, interoffice documents, and hand delivered documents and records. *Id.*

At the request of the Tennessee Attorney General's Office, Executive Secretary Campey has conducted a search of her document log to determine whether any documents or records were received from the United States District Court Clerk in any matter referencing Plaintiff in November of 2014. *Id.*, ¶ 4. Executive Secretary Campey searched the log for the period of November 1, 2014 through December 31, 2014. *Id.*, ¶ 5. The incoming mail log shows 191 pieces of mail received during that period. *Id.*, ¶ 6. There was no mail received from any United States District Court during this period of time referencing Plaintiff or his legal cases. *Id.*, ¶ 7.

### G. Affidavit of Patricia Crockett

Patricia Crockett is employed as the Executive Administrative Assistant to the Commissioner for the Tennessee Department of Correction, and, at the time of the filing of her Affidavit, had been serving in that capacity for more than twenty years. Docket No. 139, ¶ 2. As the Executive Administrative Assistant to the Commissioner for the Tennessee Department of Correction, Ms. Crockett is responsible for maintaining a log which contains all records received by the Commissioner of Correction. *Id.* Generally, this log would contain mailed USPS documents, courier-delivered documents, interoffice documents, and hand delivered documents and records. *Id.*

At the request of the Tennessee Attorney General's Office, Executive Administrative Assistant Crockett has conducted a search of her document log to determine whether any documents or records were received from the United States District Court Clerk in any matter referencing Plaintiff in November of 2014. *Id.*, ¶ 3. Executive Administrative Assistant Crockett has no record that a hearing transcript was received from the United States District Court Clerk on or after November 3, 2014, nor does she have a record of any documents being received from any Clerk of Court referencing any matter relative to Plaintiff during November or December 2014. *Id.*, ¶ 4. If she would have received any such document, Executive Administrative Assistant Crockett would have routed it to General Counsel for the Tennessee Department of Correction for handling, review, or action, if appropriate. *Id.*, ¶ 5.

### III. Analysis

#### A. Summary Judgment Standards

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**B. 42 U.S.C. § 1983**

**1. Generally**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**2. Eighth Amendment**

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed,
> nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

## C.  The Case at Bar

As discussed above, Plaintiff sues TDOC Commissioner Parker, former TDOC Commissioner Schofield, former Charles Bass Correctional Complex Warden Nixon, and Charles Bass Correctional Complex Institutional Investigator Tomlin in their official capacities alleging that they violated his Eighth Amendment rights by failing to place a statewide incompatible designation on him, which in turn resulted in his being assaulted. *See* Docket No. 1. As has also been discussed above, Plaintiff's allegations against Defendants are simply that: (1) under TDOC policies and guidelines, "the proper thing to do" (after Judge Haynes granted Plaintiff an order in another case allowing him to remain at Charles Bass until further notice) would have been for Defendants to place a statewide TDOC incompatible designation on

Plaintiff regarding every inmate who was known to be a danger to Plaintiff, but Defendants did not do so; and (2) Defendant Nixon verbally responded to one of Plaintiff's grievances and threatened to take away his recently-granted classification override. *Id.* at 4-6.

As an initial matter, Plaintiff's statement regarding "the proper thing to do" is conclusory and does not aver that any particular Defendant violated his constitutional rights. Addressing each Defendant in turn, it is undisputed that Defendant Schofield does not have any personal or direct knowledge of Plaintiff's claims in this case, had no involvement or direct decision-making oversight on the placement or lack of placement of any incompatibles involving Plaintiff as the placing of incompatibles is a security issue handled at the institutional level, and had no involvement or direct decision-making oversight relative to any assaultive incidents allegedly involving Plaintiff. Docket No. 135. It is further undisputed that Defendant Schofield had no knowledge of any grievance filed by Plaintiff as a Commissioner would not normally be involved in or appraised of grievances or their resolution. *Id.* It is additionally undisputed that Defendant Schofield was not a defendant in Plaintiff's prior case, did not receive a copy of the transcript or any other documents in that case, did not attend the hearing in Plaintiff's prior case, was not briefed on any issue in that case, and has no knowledge of any matter specifically relative to Plaintiff. *Id.* Therefore, Plaintiff cannot establish that Defendant Schofield violated his rights, and Defendant Schofield is entitled to a judgment as a matter of law.

Regarding Plaintiff's claims against Defendant Nixon, it is undisputed that Defendant Nixon was not involved in Plaintiff's prior case, has no specific knowledge about the allegations in that case other than it resulted in Plaintiff receiving an Order to be housed at Charles Bass, which was unusual due to Plaintiff's close custody classification, was not a defendant in that

16

case, and was not present at any hearings or depositions related to that case. Docket No. 136. It is further undisputed that at the time Plaintiff was received at Charles Bass, Defendant Nixon was not aware of any imminent threat to Plaintiff's safety, had no reason to designate Plaintiff as incompatible with any other inmate, and could not have done so without having evidence that such a designation was necessary. *Id.* It is also undisputed that, prior to March 2015, Defendant Nixon had no information which caused him to believe that Plaintiff was in a situation that warranted an incompatible designation. *Id.* It is additionally undisputed that Plaintiff requested that his custody level be lowered, that this lower custody level would result in his being housed in general population, and that Plaintiff's reclassification would not have been approved if Plaintiff had expressed concern regarding his safety in general population or if prison administration had any independent knowledge of a threat to Plaintiff's safety. *Id.* Finally, it is undisputed that: (1) to the best of his recollection, Defendant Nixon was not presented with, nor did he respond to, a grievance from Plaintiff related to the matters raised in this action; (2) Defendant Nixon has no knowledge about any injuries allegedly sustained by Plaintiff; and (3) as the Warden, Defendant Nixon did not have responsibility for administering medical care. *Id.* Thus, Plaintiff cannot establish that Defendant Nixon violated his rights, and Defendant Nixon is entitled to a judgment as a matter of law.

As to Plaintiff's claims against Defendant Parker, it is undisputed that Defendant Parker does not have any personal or direct knowledge of Plaintiff's claims in this case, had no involvement or direct decision-making oversight on the placement or lack of placement of any incompatibles involving Plaintiff as the placing of incompatibles is a security issue handled at the institutional level, and had no involvement or direct decision-making oversight relative to any

assaultive incidents allegedly involving Plaintiff.  Docket No. 137.  It is further undisputed that Defendant Parker had no knowledge of any grievance filed by Plaintiff as a Commissioner would not normally be involved in or appraised of grievances or their resolution.  *Id.*  Plaintiff therefore cannot establish that Defendant Parker violated his rights, and Defendant Parker is entitled to a judgment as a matter of law.

Turning to Defendant Tomlin, it is undisputed that Defendant Tomlin had no knowledge of Plaintiff's previous lawsuits, had not attended any hearings related to Plaintiff's previous lawsuits, was not provided with documentation or transcripts related to Plaintiff's previous lawsuits, did not receive any information to suggest that there was a risk to Plaintiff's safety, did not have any reason to believe that there was a threat to Plaintiff's safety, and did not have any reason to believe that incompatibles needed to be placed on Plaintiff's institutional record.  Docket Nos. 134.  It is further undisputed that the first time Defendant Tomlin was made aware that Plaintiff wanted an incompatible put on his record was in March 2015.  *Id.*  It is additionally undisputed that Defendant Tomlin had no knowledge of Plaintiff's alleged injuries, nor was she ever in a position to offer Plaintiff medical care.  *Id.*  Accordingly, Plaintiff cannot establish that Defendant Tomlin violated his rights, and Defendant Tomlin is entitled to a judgment as a matter of law.

### IV.  Conclusion

For the foregoing reasons, the undersigned finds that no genuine issues of material fact exist and that Defendants are entitled to a judgment as a matter of law.  Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 132) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge