# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **TYLER FITZGERALD RAYBON-TATE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:15-cv-00322** |
| | ) | **Judge Aleta A. Trauger** |
| **DERRICK SCHOFIELD** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM

Before the court are the plaintiff's Objection and supplemental Objection (Doc. Nos. 161, 164) to the magistrate judge's Report and Recommendation ("R&R") (Doc. No. 160), recommending that the defendants' Motion for Summary Judgment (Doc. No. 132) be granted and that this action be dismissed in its entirety with prejudice.

As set forth herein, the court accepts the magistrate judge's recommended disposition and will grant the Motion for Summary Judgment and dismiss this case. All other pending motions will be denied as moot.

## I.     Factual and Procedural Background

It appears to be undisputed that the plaintiff filed a previous lawsuit in this court, *Raybon-Tate v. Chapman*, No. 1:14-cv-00100 ("*Raybon-Tate I*") (M.D. Tenn. Aug. 6, 2014) (Compl., Doc. No. 1). Judge William J. Haynes of this court, now retired, held a hearing on October 31, 2014, in which he received testimony from the plaintiff about having been repeatedly assaulted by fellow inmates while housed at South Central Correctional Facility ("SCCF") and about prison officials' failure and refusal to take any action to prevent further assaults. Based on the plaintiff's testimony at that hearing, Judge Haynes ordered that the plaintiff be placed at Charles

Bass Correctional Complex ("CBCX") pending further order of the court. *Raybon-Tate I* (M.D. Tenn. Oct. 31, 2014) (Order, Doc. No. 16). The plaintiff, pursuant to Judge Haynes' order, was transferred to CBCX sometime shortly after the October 31, 2014 Order was entered and was housed at CBCX at all times relevant to the present action.

Judge Haynes also ordered that the transcript of the hearing be prepared and filed and that the Clerk send copies of the transcript ("Hearing Transcript") to the Warden of SCCF, who was the defendant in that lawsuit, and to the Commissioner of the Tennessee Department of Correction ("TDOC"). *Raybon-Tate I* (M.D. Tenn. Nov. 3, 2014) (Order, Doc. No. 17). During the hearing, the plaintiff specifically testified that Elbert Gleaves was one of the inmates at SCCF who had repeatedly assaulted him. *See Raybon-Tate I* (M.D. Tenn. Nov. 4, 2014) (Hr'g Tr., Doc. No. 20, at 6–7, 10).

On January 22, 2015, while in a holding cell at the Davidson County Courthouse, the plaintiff was assaulted by Gleaves and another individual (the "January 2015 assault").

The plaintiff filed the instant lawsuit on March 30, 2015 against defendants Derrick Schofield, then the Commissioner of TDOC[1]; Tony Parker, then Assistant Commissioner of Prisons[2]; Stevenson Nixon as Deputy Warden of CBCX[3]; and Deborah Tomlin, then Institutional Investigator for CBCX. (Compl., Doc. No. 1.) In the verified Complaint, the plaintiff alleges that, pursuant to TDOC policies and guidelines, the TDOC defendants should have placed a "statewide T.D.O.C. incompatible" notation in his record immediately following the hearing before Judge Haynes, showing that he was incompatible with the inmates who had assaulted him.

---

[1] Schofield resigned from that position in June 2016. (Schofield Aff., Doc. No. 135 ¶ 1.)

[2] Parker became Commissioner of TDOC in July 2016. (Parker Aff., Doc. No. 137 ¶ 1.)

[3] Nixon indicates that he was actually Warden of CBCX at the relevant time but has since retired. (Nixon Aff., Doc. No. 136 ¶ 2.)

(Doc. No. 1, at 4–5.) He also alleges that they did not do so and that "they all refused [his] request for incompatibles to be put proper[ly] in the court [sic] to protect [his] life and safety. Which led up to [his] being sever[ely] assaulted once against by Mr. Elbert Gleaves," who was identified in the Hearing Transcript as one of the inmates who had repeatedly assaulted him at SCCF in June 2014. (*Id.* at 5.) He claims that, if the defendants had followed TDOC policy, he would never have come into contact with Gleaves while at the Davidson County Courthouse on January 22, 2015. He alleges that he suffered unspecified injuries from the January 22 assault that he feels have not been "properly checked & clear[ed]." (*Id.* at 6.) As of the date he filed the complaint on March 30, 2015, Gleaves and the others who had assaulted him still had not been entered into TDOC's computer system as incompatibles. (*Id.* at 5.)

For relief, the plaintiff requests that the defendants be ordered to add "all [his] incompatibles . . . into the T.D.O.C. computer as statewide incompatibles" (*id.* at 5), that he be housed at the Lois M. Deberry Special Needs Facility for the remainder of his prison term, that he have "outside medical" examine him and provide physical therapy, and that he be awarded $3 million in damages and immediate release from prison.

The defendants filed their Motion for Summary Judgment, supporting Memorandum, Statement of Undisputed Facts, and the Affidavits of Schofield, Parker, Nixon, and Tomlin, as well as those of Marcia Campey and Patricia Crockett, in April 2017. (Doc. Nos. 132–40.) In their Affidavits, the defendants expressly deny any personal knowledge of the plaintiff's allegations of repeated assaults at SCCF or his requests that the inmates responsible for those assaults be identified as "incompatible" with the plaintiff on TDOC's database until after the January 2015 assault. The plaintiff filed a Response opposing the motion, which also includes a response to the defendants' Statement of Undisputed Facts. (Doc. No. 144.) Although the

plaintiff denies many of the defendants' factual assertions, he did not supply his own affidavit or sworn statement to support his position.

The magistrate judge filed his R&R on December 1, 2017. The magistrate judge states that he construes the Complaint as suing the defendants in their official capacity only (*see* Doc. No. 160, at 2, 15) but, without addressing the distinction, analyzes the claims as asserting individual capacity claims under 42 U.S.C. § 1983. He recommends that the Motion for Summary Judgment be granted on the grounds that the facts set forth in the defendants' Affidavits establish that (1) defendants Schofield and Parker had no personal involvement or direct decision-making oversight in any of the decisions involving the plaintiff's placement or the designation of incompatibles, did not have knowledge of any grievances filed by the plaintiff, and had never received a copy of the Hearing Transcript and were not aware of the events that gave rise to the claims asserted in *Raybon-Tate I*; (2) defendant Nixon was not a defendant in the prior case, had no specific knowledge about it other than that it required that the plaintiff be housed at CBCX, had not received a copy of the Hearing Transcript, was not aware of immediate threats to the plaintiff's safety or of any reason to designate the plaintiff as incompatible with any other inmates, and, as warden, was not responsible for administering medical care; and (3) defendant Tomlin had no knowledge of the prior lawsuit, was not provided a copy of the Hearing Transcript, did not receive information suggesting that there was a risk to the plaintiff's safety prior to the January 22, 2015 assault, was not apprised that the plaintiff wanted incompatibles put on his record until sometime in March 2015, had no knowledge of the plaintiff's alleged injuries, and was not in a position to offer the plaintiff medical care.

The plaintiff filed an Objection and supplemental Objection (Doc. Nos. 161, 164) to the R&R, asserting generally that he is in possession of evidence showing that Schofield and Parker

did, in fact, receive copies of the Hearing Transcript, because he mailed them copies himself, and Judge Haynes ordered that a copy be mailed to the Commissioner. He also addresses factors extraneous to the claims in his Complaint, asserting that the defendants' actions regarding his housing and classification before and after the January 2015 assault are "fishy" (Doc. No. 161, at 2) and that all of the defendants were aware of his prior history of assaults at SCCF, because of the fact that it resulted in his extraordinary transfer to CBCX. He insists that his entire reason for filing this lawsuit is that, if the defendants had taken time to "properly follow their own policies," they would have realized that he was incompatible with inmate Gleaves and others and the January 2015 assault would never have occurred. (*Id.* at 3.) He specifically alleges that, pursuant to TDOC policy, "[i]f an inmate is charged with assaulting another inmate . . . [t]hose 2 individuals are immediately to be made incompatible upon incident." (*Id.*) In other words, he insists, Tomlin and Nixon should, at the very least, have ensured that Gleaves and the other inmate who assaulted him in January 2015 were added to his "incompatibles" list without the plaintiff's having to take any further action. Instead, no action was taken until after the plaintiff filed this lawsuit.

The plaintiff also protests the unfairness of the current proceedings, insisting that

[i]t's always going to be their word against mines. And just because I'm an indigent man with a criminal record and representing myself pro se and [they're] people with a good background and . . . paid for legal team (Attorneys). That makes their side of the story truthful. I don't think that's fair.

(*Id.* at 4.)

Attached to the Objection are copies of numerous certified mail receipts showing that documents were mailed to Parker and Schofield on various dates, but these receipts are not accompanied by an affidavit or any indication showing what documents were mailed.

In his supplemental Objection, the plaintiff responds to specific statements in the

defendants' Affidavits. He contests Schofield's and Parker's assertions that they never received copies of the Hearing Transcript. He insists that he informed Tomlin and Nixon on November 3, 2014 and weekly thereafter that the individuals who had assaulted him at SCCF needed to be added to his list of incompatibles on the TDOC computer database, but this request was always denied, contrary to Tomlin's assertion that the plaintiff did not make a request that incompatibles be added to his record until sometime in March 2015. (*See* Doc. No. 164, at 5–6.) He insists that Tomlin could have prevented but failed to prevent the January 2015 assault. (*Id.* at 6.) He insists that Nixon granted his request for a reclassification (from close custody to medium) only to avoid being sued after the January 2015 assault, but then still failed to ensure that Gleaves was placed on his incompatibles list until after the plaintiff filed this lawsuit.

## II.     Standard of Review

### A.     Review of Report and Recommendation

The district court must review *de novo* any portion of a magistrate judge's report and recommendation to which objections are "properly" lodged. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B) & (C). An objection is "properly" made if it is sufficiently specific to "enable[] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

### B.     Summary Judgment Standard

A party moving for summary judgment bears the burden of establishing that there are no genuine issues of material fact in dispute and that he is "entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015); *see also First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968) (nonmoving party must submit sufficient evidence supporting claimed factual dispute to require factfinder to resolve parties' differing versions of truth at trial).

In reviewing the record, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, if there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party for the issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *see Anderson*, 477 U.S. at 250 (summary judgment is proper only when "there can be but one reasonable conclusion as to the verdict").

Where a party proceeds *pro se*, the court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, unsupported allegations cannot overcome a properly supported motion for summary judgment and are not sufficient to defeat a well-supported motion for summary

judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003).

**III.     Analysis**

The court reviews *de novo* the Motion for Summary Judgment, based on the plaintiff's objections that material factual disputes preclude judgment in the defendants' favor and his assertion that he has presented sufficient facts to support the legal elements of his claims.

The plaintiff brings suit under 42 U.S.C. § 1983 to redress purported violations of his constitutional right under the Eighth Amendment to be free from cruel and unusual punishment. To prevail on a claim under § 1983, a plaintiff must prove two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law. *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014).

There is no dispute here that the defendants, as TDOC employees and officials, were at all relevant times persons acting under color of law. Because the magistrate judge construes the claims as asserted against the defendants in their official capacity but nonetheless analyzes them as asserted against the defendants in their individual capacity, the distinction between official and individual capacity claims bears mention.

The State is not a "person" that may be sued under § 1983, as it enjoys sovereign

immunity and Eleventh Amendment immunity from suit in federal court. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Moreover, a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office, *i.e.*, against the State." *Id.* at 71 (internal quotation marks and citation omitted). Thus, sovereign immunity "also applies to actions against state officials sued in their official capacity for money damages." *Id.* Under an exception created by *Ex parte Young*, 209 U.S. 123 (1908), however, a plaintiff can sue a state official in his official capacity for prospective injunctive and declaratory relief to compel the state official to comply with federal law. *S&M Brands v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). An official-capacity suit is typically characterized by allegations that the plaintiff's injury arises from an official's implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the government entity that the officer represents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see id.* ("[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . .").

In this case, the allegations in the Complaint make it clear that the plaintiff does not intend to sue the defendants in their official capacity. For instance, he does not allege that the defendants' actions were based on an official state custom or policy. Rather, he alleges that the defendants failed to comply with TDOC policy for registering inmates' "incompatibles." He claims that the defendants were personally aware of the risk of harm posed to the plaintiff by other inmates but abdicated their responsibility to ensure that TDOC comply with its own policies or to protect the plaintiff from assault by an individual who, according to the plaintiff, the defendants knew or should have known posed a serious risk of harm to the plaintiff.

Accordingly, the question posed by the defendants' Motion for Summary Judgment is

whether the undisputed facts, viewed in the light most favorable to the plaintiff, establish that the defendants, acting in their individual capacity, violated the plaintiff's constitutional rights. Here, the plaintiff's verified Complaint states claims that the defendants were deliberately indifferent to a serious risk of harm to the plaintiff, a risk that, in fact, culminated in the January 2015 assault.

It is well established that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). In addition, prison officials "have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks and citation omitted). However, not every injury suffered by a prisoner at the hands of another inmate "translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* Rather, to establish liability, two requirements must be met: "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* at 834 (citation omitted). And second, the prison official must have a "sufficiently culpable state of mind." *Id.* That is, the official must have acted with deliberate indifference, a state of mind defined by the Supreme Court as falling somewhere "between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. Specifically,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. The state-of-mind standard is subjective. *Id.* at 828, 838.

The defendants in this case all submitted affidavits attesting that they were not personally aware of the plaintiff's difficulties at SCCF, had not actually seen or read the Hearing Transcript,

were not aware that inmate Elbert Gleaves, in particular, was incompatible with the plaintiff or that he should have been entered on TDOC's "incompatibles" database as such prior to the January 2015 assault. They deny that the plaintiff ever specifically requested that any inmates be designated as incompatibles until after the January 2015 assault. (*See* Doc. Nos. 134–37.) In his Response to the Motion for Summary Judgment and, specifically, to the defendants' Statement of Undisputed Facts, the plaintiff attempts to refute the defendants' assertions, but he did not support his own allegations with reference to any evidence in the record, nor did he submit his own sworn statement or affidavit. Likewise, although he submitted various documents (including copies of certified mail return receipts) with his Objection and supplemental Objection, these documents are not sworn or verified and do not include citations to the record to support the plaintiff's factual assertions.

The Local Rules of this court specify that, in responding to a Statement of Undisputed Facts, the non-moving party must "demonstrate" that a particular fact is disputed with a "specific citation to the record." L.R. 56.01(c). Moreover, "[a] district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). "Thus, a court is entitled to rely—in determining whether a genuine issue of material fact exists on a particular issue—only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Beatty v. UPS*, 267 F.

Supp. 2d 823, 829 (S.D. Ohio 2003), *aff'd*, 103 F. App'x 860 (6th Cir. 2004).

The plaintiff's failure to point to specific evidence in the record to support his position is fatal to his cause, as it effectively means that he has not refuted the evidence contained in the defendants' affidavits. On this basis, summary judgment in favor of the defendants is warranted. However, even if the court sifts through the record and considers as true the allegations in the plaintiff's verified Complaint and his unsworn Objections and Response to the Defendants' Statement of Undisputed Facts, the plaintiff's claims nonetheless fail as a matter of law. That is, even if the court presumes that there is a factual dispute as to whether the defendants were subjectively aware of, but deliberately indifferent to, a substantial risk of harm posed to the plaintiff by Gleaves and other inmates, the facts as alleged in the verified Complaint fail to establish the objective component of the plaintiff's Eighth Amendment claim-that the plaintiff suffered an objectively serious deprivation of his rights.

In that regard, the Supreme Court and the Sixth Circuit have recognized that "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). Because the alleged constitutional deprivation, to be actionable, must "result in the denial of 'the minimal civilized measure of life's necessities," the plaintiff must allege that he has suffered "actual harm" as a result of the defendants' acts or omissions. *Id.* at 601 (citations omitted). And when a prisoner requests monetary relief for past injuries, he must show that the force used, and thus the injury, was more than "*de minimis.*" *See Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992) ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (citations and

internal quotation marks omitted)); *see also Taylor v. Larson*, 505 F. App'x 475 (6th Cir. 2012) (where a plaintiff does not allege that he suffered any pain, he does "not experience more than a *de minimis* use of force and he does not make out an Eighth Amendment violation" (citing *Hudson,* 503 U.S. at 6–7, 9)); *Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011) (affirming summary judgment for the defendants in an excessive force claim because the plaintiff failed to establish more than *de minimis* injury, where his accident report reflected "small superficial abrasions" on his elbow and shoulder, he exhibited "no redness, swelling, heat or abrasion" on his allegedly injured knee, and he did not seek follow up treatment after the day the alleged assault occurred); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005) ("This court has indicated . . . that even though the physical injury required . . . for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward."); *accord Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997) (finding that "a sore, bruised ear lasting for three days" was a *de minimis* injury that did not support a claim based on an Eighth Amendment violation); *Davis v. Chapdelaine*, No. 3:16-CV-268 (VLB), 2017 WL 3222531, at *4 (D. Conn. July 28, 2017) ("[O]ther Circuits also require prisoners to prove more than a *de minimis* injury in order to prevail on [Eighth Amendment] claims, particularly when they are seeking monetary damages against the prison officials." (collecting cases)).

In this case, the plaintiff alleges in the verified Complaint that he was "severely" assaulted and that he "suffered injuries" (Doc. No. 1, at 5, 7), but he does not specify the nature of the injuries or allege that he was ever in pain. The Incident Report attached to the Complaint states:

> All inmates involved refused medical treatment from Criminal Justice Court Medical Staff. However, upon their return to Charles B. Bass Correctional

Complex, they were all assessed by Kai-L Cobb, Registered Nurse and Debra
Tomco, Licensed Practical Nurse. A CR-2592 Accident incident Traumatic Injury
Report was completed on all three, only minor bruises were noted.

(Doc. No. 1, at 15.) There is no evidence in the record that the plaintiff ever sought follow-up

medical treatment or that he suffered more than "minor bruises" as a result of the January 22,

2015 assault. (*Id.*) Under these circumstances, the court finds that the plaintiff fails to state an

Eighth Amendment claim based on the assault by Gleaves, even assuming that the defendants

acted with deliberate indifference in failing to assure, prior to January 22, 2015, that Elbert

Gleaves and the others whom the plaintiff had accused of assaulting him at SCCF in June 2014

were on his "incompatibles" list.

It is worth noting that courts have distinguished between inmates' claims seeking

injunctive relief to prevent a threatened future assault and those seeking damages for a past

assault. On the one hand, "it is true that a prisoner does not have to wait for a 'tragic event' such

as an assault by another inmate to occur before obtaining relief." *Davis*, 2017 WL 3222531, at

*5. Once such an assault has occurred, however, and the plaintiff seeks to obtain monetary

damages arising from a past failure to protect, a showing of more than a *de minimis* injury is

required. *Id.* Insofar as the plaintiff seeks damages based on the January 2015 assault, his claims

fall in the latter camp and fail because he has not shown more than *de minimis* injury.

However, the Complaint also asserts a claim for injunctive relief, requesting that

defendants be required to insure that Gleaves and others are included on the plaintiff's

incompatibles list. (*See* Doc. No. 1, at 5.) Tomlin's Affidavit and the exhibits attached thereto

establish that Edwin Santiago, Jr., James Shields III, Audarius Watts, Ladarius Craig, Elbert

Gleaves, and Christopher Young, pursuant to the plaintiff's request, have been listed on the

plaintiff's list of incompatibles in TDOC's database since April 1, 2015 (Doc. No. 134 ¶ 10 and

Ex. 1), just two days after the plaintiff filed his Complaint and weeks before summonses were issued or service was effected upon any of the defendants. The plaintiff does not dispute Tomlin's contention that these individuals have been listed as incompatibles with the plaintiff. That particular request for injunctive relief has, therefore, been rendered moot. Moreover, the plaintiff cannot establish that he is entitled to the other injunctive relief he requests, such as being moved to a particular prison or released altogether, and he concedes in his Response to the Motion for Summary Judgment that none of the defendants was personally responsible for providing or failing to provide medical care.

Finally, to the extent that the plaintiff continues to complain about events that occurred after the assault and a continued risk of harm—specifically, that it took more than two months (from January 22 until April 1, 2015) for the defendants to add Gleaves and others to his incompatibles list—any claim based on that delay is subject to dismissal because, again, the plaintiff has not alleged or shown that he was actually injured by the delay.

In sum, the defendants are entitled to summary judgment in their favor on all claims asserted in the Complaint.

## IV.     Conclusion

For the reasons set forth herein, the court accepts the recommendation that summary judgment be granted. The court will overrule the plaintiff's Objection and supplemental Objection (Doc. Nos. 161, 164), grant the defendants' Motion for Summary Judgment (Doc. No. 132), and dismiss this action with prejudice. All other pending motions will be denied as moot. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge